IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2019 Session

## GABRIEL C. TORRES v. STATE OF TENNESSEE

Appeal from the Circuit Court for Robertson County
No. 74CC2-2011-CR-659   William R. Goodman III, Judge

_____

No. M2018-01629-CCA-R3-PC

_____

The Petitioner, Gabriel C. Torres, appeals from the Robertson County Circuit Court's denial of his petition for post-conviction relief from his rape of a child conviction, for which he is serving a twenty-five-year sentence. On appeal, he contends that the post-conviction court erred in denying his claim that trial counsel provided ineffective relative to the communication of guilty plea offers. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

H. Garth Click, Springfield, Tennessee, for the Appellant, Gabriel C. Torres.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; John W. Carney, Jr.., District Attorney General; Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner was convicted at a jury trial related to his sexual abuse of a child relative. Following the trial, the Petitioner's trial counsel filed an untimely motion for a new trial. The trial court dismissed the motion on the basis that it lacked jurisdiction to consider an untimely motion. Counsel also filed an untimely notice of appeal and a motion to waive the timely filing of the notice of appeal, and this court granted the motion. This court held that, due to the untimeliness of the motion for a new trial, the Petitioner's issue was waived regarding whether the trial court had failed to act as the thirteenth juror. This court considered the Petitioner's challenge to the sufficiency of the evidence on the merits and held that the evidence was sufficient to support the

conviction. *See State v. Gabriel Torres*, No. M2013-00765-CCA-R3-CD, 2014 WL 4113112 (Tenn. Crim. App. Aug. 21, 2014).

The Petitioner filed a pro se petition for post-conviction relief, in which he alleged that (1) he received the ineffective assistance of trial counsel, (2) the evidence was insufficient to support his conviction, and (3) the trial court failed to act as thirteenth juror. After counsel was appointed, the Petitioner filed an amended petition which alleged that trial counsel had failed to advise him regarding possible plea agreements. *See Torres v. State*, 543 S.W.3d 141, 142 (Tenn. Crim. App. 2017).

The post-conviction court conducted a hearing. Previously, this court summarized the hearing's evidence:

Petitioner testified that he was an "illegal" who had been in the United States for about sixteen years prior to his indictment. Petitioner had no formal education and claimed he could not read or write. Additionally, Petitioner claimed that he did not speak English and that there was an interpreter present each time he met with trial counsel.

Petitioner insisted that the State "never made [him] any [plea] offers when [he] was in jail." Petitioner also testified that trial counsel never discussed settlement offers with him prior to trial. In fact, Petitioner stated that "it was actually right before the trial, the same day as the trial, when they offered me those four years and one month." Petitioner claimed that if he "had seen [plea offers], he would've accepted them." Petitioner was "ready" to enter a plea but that did not happen.

Petitioner recalled trial counsel's telling him about the appeal process but that trial counsel never came to "talk to [him] at all" about the appeal. Petitioner relied on other prisoners who told him about the thirty-day time limit for filing an appeal. Petitioner even had someone call the clerk's office and discovered that no appeal had been filed.

Counsel for the State assigned to prosecute Petitioner's case testified at the hearing that he entered into "plea negotiations" with trial counsel. "Up until the trial date, the offer had consistently been eight years to serve." On the morning of trial, counsel for the State recalled that the parties "discussed the possibility of a six-year sentence to serve" but that he needed to consult with the family of the victim prior to making that a firm offer. The offer was communicated to trial counsel. Trial counsel told counsel for the State that Petitioner did not want the offer. At that point, counsel for the State recalled telling trial counsel to bring a formal offer but

-2-

nothing "less than four [years]." Trial counsel came back and asked for an offer of three years, to which counsel for the State replied, "Let's just try it."

Trial counsel testified that he was appointed to represent Petitioner at trial and met with him approximately "four or five times" in addition to court dates. Trial counsel was under the impression that he was "able to communicate without any problems [with Petitioner], so [he] did not have an interpreter at the jail." Trial counsel communicated to Petitioner that he was facing "75 years" as a "maximum." Trial counsel recalled the initial offer was to "reduce the rapes of a child, in two of the three counts, to aggravated sexual battery for a term of eight years on each—each count and to run those concurrently for an eight-year sentence." Trial counsel testified that Petitioner "did not seem inclined" to take the eight-year offer. On the morning of trial, trial counsel recalled that the State extended a six-year offer. The offer was communicated to Petitioner through an interpreter. Petitioner "shook his head" and told the interpreter that it was "too much," so trial counsel attempted to get a lower offer from the State. Trial counsel recalled "the number four was thrown out" but did not have an "independent recollection that [Petitioner was] told that [counsel for the State] had offered four." Trial counsel's "memory [wa]s that . . . [Petitioner] indicated that three years was a number that might have interested him." At that point, counsel for the State told trial counsel they would "try it." Trial counsel felt that Petitioner was "involved" in the negotiation process.

Trial counsel readily admitted that he "missed the deadline" for the motion for new trial. Appellate counsel took over the case and "filed some motions with the Court of [A]ppeals." Trial counsel was under the impression that Petitioner was "granted the ability to ask for his motion for new trial and appeal."

*Id.* at 142-43.

The post-conviction court entered a written order. In it,

[The] court determined that trial counsel communicated plea offers to Petitioner prior to the start of trial and that Petitioner "responded in such a manner whereas trial counsel was justified in believing that such offers had been declined." Further, the post-conviction court found that trial counsel met with Petitioner several times prior to trial, and even if trial counsel "should have perhaps visited more frequently with [Petitioner,] there is no

-3-

showing . . . [of] any prejudice." The post-conviction court noted that it was "undisputed" that trial counsel failed to file a motion for new trial but that Petitioner was entitled to an appeal from his conviction. Despite the appeal, the post-conviction court deemed trial counsel's failure to act "ineffective assistance of counsel" that could not "simply [be] resolved by the grant of delayed appeal" primarily because of this Court's determination that the "thirteenth juror" issue was waived on appeal. The post-conviction court noted that the trial court dismissed the motion for new trial due to lack of jurisdiction and that trial counsel's failure to file a timely motion for new trial "effectively denied [Petitioner] the opportunity to have the trial judge act as the thirteenth juror." As a result, the post-conviction court granted Petitioner a new trial.

*Id.* at 143-44.

The State appealed, and this court held that the post-conviction court erred in granting a new trial based upon trial counsel's ineffectiveness in failing to file a timely motion for a new trial and that the post-conviction court should have granted a delayed appeal, which would afford the Petitioner an opportunity to file a motion for a new trial and appeal from any adverse determination. This court also ordered that the Petitioner's remaining post-conviction claims should be held in abeyance pending final disposition of the delayed appeal, in accord with Rule 28, section 9(D)(1)(b) of the Rules of the Tennessee Supreme Court. *See id.* at 147-48.

On remand, the Petitioner waived his right to a motion for a new trial and a delayed appeal of his conviction and opted to pursue his remaining post-conviction claims that were being held in abeyance. In accord with the Petitioner's wishes, the post-conviction court conducted a hearing, at which the court took notice of the testimony from the first post-conviction hearing.

At the second hearing, the Petitioner testified with the aid of an interpreter. The Petitioner said he could not read or write, had lived in the United States for twenty years, and was not in the country legally. He said he had never been arrested in the United States or Mexico before the charges in the present case. He said trial counsel never gave him any documents related to his case. He said that counsel put documents on the table and said the Petitioner was being accused of "this" and that the Petitioner would respond that he was not guilty.

The Petitioner testified that he did not receive a plea offer from the State before the trial. He said that other inmates told him his attorney should advise him of any plea offers but that trial counsel never did. The Petitioner said that on the day of the trial, he received an offer of four years and one month. The Petitioner said that "on the day of the

paperwork," the judge advised the prosecutor that the Petitioner's constitutional rights had been violated. The Petitioner said that he and counsel talked outside the courtroom and that counsel told him there was no evidence because the Petitioner's family had called the police and said the Petitioner had not committed the crime.

The Petitioner testified that trial counsel advised him he could be found guilty at a trial and said counsel took advantage of the Petitioner's ignorance. The Petitioner said he "was going to talk to twelve people" about the violation of his constitutional rights but that counsel said not to discuss this because "the judge took the papers away." He identified the "papers" as a document on which the police told him to write his name and explained that he had not known what the document said. The Petitioner clarified he told counsel he wanted to testify but that counsel said he should not because if the Petitioner testified, the State would be able to offer the papers the judge had excluded.

The Petitioner testified that he told trial counsel he would accept the plea offer for four years and one month, rather than go to trial. He said his wife[1] was present and agreed he should accept the offer. He acknowledged that counsel advised him of the likelihood of deportation if he accepted the offer. He said he thought the plea agreement papers would be brought to him, but they were not. He agreed a translator was present when he communicated with counsel about the plea offer. The Petitioner said that if counsel said they had a conversation in English, it was not true. He agreed counsel brought an interpreter with him when they met at the jail.

The prosecutor from the Petitioner's conviction proceedings testified that, to the best of his recollection, the Petitioner was in pretrial confinement for more than a year between the arraignment and the trial. The prosecutor said he spoke to trial counsel several times. The prosecutor stated that the case was unique because the victim was able to describe three incidents in detail, although there was no corroborating evidence other than her description of her bedroom. He said the victim was always consistent about the facts supporting the three counts when he spoke with her but that the information she gave him relative to one count was inconsistent with her forensic interview. He said that in child sexual abuse cases in which the testimony of the victim was the State's only evidence, the State often made a plea offer involving a shorter period of incarceration due to the risk of receiving a not guilty verdict. He said that as a prosecutor, he tried to reach a middle ground with the defense during the plea negotiation process.

The prosecutor testified that he made the Petitioner an initial pretrial plea offer of "eight years to serve" and that he had reduced the offer by the morning of the trial to six

---

[1] The Petitioner testified that his wife had been present for the plea negotiations, but a witness who testified that she had been present for the plea negotiations claimed she was the Petitioner's former girlfriend.

years to be served at 30%. He said the trial court allowed the parties additional time for settlement negotiations on the morning of the trial. He said trial counsel advised him that the Petitioner was unwilling to accept the eight-year and six-year offers but that the Petitioner might be willing to accept a lower offer. The prosecutor said that he inquired what the Petitioner might accept, that he told counsel to make him an offer, and that he told counsel the offer could not be for less than four years. The prosecutor explained that he would have to "go against the family" for a six-year plea agreement and that he did not make a firm offer of four years but that he would have considered a four-year offer from the Petitioner. The prosecutor said that after counsel conferred with the Petitioner for five to ten minutes, counsel advised the prosecutor that he thought the Petitioner would accept three years. The prosecutor said he was unwilling to consider a three-year plea offer.

Demetria Rual, the Petitioner's former girlfriend, testified that they had been together for about eight years at the time of the hearing. She said that she had been present for the Petitioner's trial and that she had spoken with him about whether he might accept a plea offer, although she did not recall the terms of the offer. She said the Petitioner asked for her advice, but she told him she could not tell him whether to accept the offer.

Trial counsel testified that he met with the Petitioner four to five times before the trial. He said that although he did not always have an interpreter with him when he visited the Petitioner at the jail, he thought they communicated well in their jail meetings. Counsel said the Petitioner was able to ask questions and that counsel never had any concerns that the Petitioner did not understand their conversations. Counsel noted that he had experience practicing in a town with "a lot of migrant workers and Spanish speaking folks" and that he had no concerns about the Petitioner's ability to understand him. Counsel said an interpreter was present for all of the Petitioner's court dates. Counsel said that the Petitioner was often able to answer counsel's questions before the interpreter finished interpreting and that counsel did not question the Petitioner's comprehension of what counsel said.

With regard to the plea negotiations on the day of the trial, trial counsel testified that the prosecutor offered to reduce the charged offense from rape of a child to aggravated sexual battery with an eight-year sentence to be served in the Department of Correction. Counsel said he asked the trial court to permit the Petitioner's "wife" to meet with the Petitioner, that an interpreter was present when he met with the Petitioner, and that the Petitioner declined the plea offer. Counsel said he spoke with the prosecutor, who extended a six-year offer. Counsel said the Petitioner stated that the six-year offer was not acceptable but that the interpreter told counsel that, based upon the colloquial differences between English and Spanish, what the Petitioner meant was that the Petitioner was not actually saying no and was considering a plea agreement but that the

sentence was too lengthy. Counsel said that he tried to influence the prosecutor to consider a lesser sentence because the Petitioner thought six years was too much, that the prosecutor appeared frustrated, and that the prosecutor said they would just try the case.

Trial counsel testified that he did not recall communicating a four-year offer to the Petitioner. Counsel said that if something was said about four years, it might have been counsel having said he would try to get an offer for four years. Counsel said, however, that he had no distinct recollection of having said this.

Trial counsel testified that he had advised the Petitioner against testifying. Counsel noted that the Petitioner had given a pretrial statement in which he said he had awakened to find his pants undone and the victim on his lap and that questioning about this statement would be damaging. Counsel also noted that the victim's account of one of the incidents was incredible and that he thought the jury might reject all three counts[2] based on the incredible nature of one count. Counsel said he did not tell the Petitioner that the Petitioner could not testify. Counsel said the trial judge always advised defendants of the right to testify. Counsel said he never had concerns about the Petitioner's understanding "what he was accused of, what we were doing, and what a jury trial was."

Trial counsel acknowledged that he had failed to file a timely motion for a new trial.

After receiving the proof, the post-conviction court denied relief in a written order. The court found that trial counsel communicated the State's offers to the Petitioner and that the Petitioner responded in a manner which justified counsel's belief that the Petitioner had rejected them. Regarding the Petitioner's argument that counsel provided ineffective assistance because counsel failed to communicate adequately with him, the court found that a factual discrepancy existed as to whether an interpreter was present at every meeting. The court found that although the Petitioner may have had a limited understanding of English, an interpreter was present a sufficient number of times to facilitate communication between the Petitioner and counsel. The court found, as well, that counsel thoroughly cross-examined the State's witnesses and presented defense proof. Thus, the court concluded that the Petitioner's ineffective assistance claim was without merit.

On appeal, the Petitioner contends that the post-conviction court erred in denying his ineffective assistance of counsel claim relative to the communication of plea offers.

---

[2] As we have noted, the State eventually dismissed one of the three counts.

He argues that the appropriate remedy is for the court to order the State to extend its previous six-year plea offer to him.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

To support his contention that trial counsel provided ineffective assistance by failing to communicate plea offers, the Petitioner argues that counsel failed to explain at the post-conviction hearing why he could not recall discussing a four-year plea agreement with the Petitioner or why he had asked the prosecutor about a three-year offer despite the prosecutor's statement that he would not consider an offer involving a sentence of less than four years. The Petitioner argues that the only conclusion to be drawn from the Petitioner's mistaken belief that he was receiving a plea agreement involving a four-year, one-month sentence at 30%, as compared with the twenty-five-year sentence at 100% he actually received, was that counsel provided ineffective assistance. The Petitioner argues that based upon counsel's lack of recollection of specific matters and counsel's lack of credibility, the court should have concluded that counsel provided ineffective assistance.

As we have stated, the burden to prove an ineffective assistance of counsel claim is on the Petitioner. In the present case, the post-conviction court credited the testimony of the prosecutor and trial counsel over that of the Petitioner. The court found that counsel communicated the plea offers to the Petitioner and that counsel was justified in believing the Petitioner had rejected them. The evidence at the post-conviction hearing reflects that an interpreter was present and involved in the plea discussions on the day of the trial. Notwithstanding the Petitioner's testimony about an offer of four years and one month, which the Petitioner testified he wanted to accept, the credited testimony of counsel and the prosecutor does not support a conclusion that the State made such an offer. The record supports the court's determination that the Petitioner failed to prove that counsel's performance was deficient.

With regard to the question of prejudice as a result of counsel's alleged deficient performance, we note that although the Petitioner testified at the hearing that he thought he had accepted a plea offer for a sentence of four years and one month, the record supports, at most, that the Petitioner may have desired an offer involving a sentence in the range of four years. Although the prosecutor testified that he told counsel any counteroffer to the six-year offer should involve a sentence of no less than four years, the credited testimony of trial counsel and the prosecutor shows that the State never formally extended a four-year offer. Moreover, the Petitioner argues on appeal that the appropriate remedy is for the post-conviction court to order the State to extend its previous six-year plea offer, but the evidence at the hearing showed that the Petitioner rejected this offer when it was extended to him on the day of the trial. Thus, the record supports the court's determination that the Petitioner failed to establish prejudice from counsel's alleged deficient performance. The court did not err in denying the Petitioner's ineffective assistance of counsel claim.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE